UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BOBBY L. COATES,

    Plaintiff,

v.                                                                                                            CASE NO: 8:07-cv-291-T-26TBM

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

    Defendant.
_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 102), and Plaintiff's Motion to Dismiss (Dkt. 116), which this Court treats as Plaintiff's memorandum in opposition to Defendant's Motion for Summary Judgment.[1] After careful consideration of the motion, the applicable law, and the entire file, including the administrative record, the Court concludes that summary judgment should be granted.

**PROCEDURAL BACKGROUND**

This case, filed pursuant to ERISA,[2] has traveled a circuitous journey leading up to the resolution of this second motion for summary judgment.[3] In January 2008, this Court

---

[1] See this Court's order of March 30, 2009 at docket 118. Plaintiff simultaneously filed an Affidavit in Opposition. (Dkt. 116.)

[2] Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.

[3] See this Court's prior order at docket 40, cited at Coates v. Guardian Life Ins. Co., 2008 WL 269133 (M.D. Fla. Jan. 30, 2008).

denied the first motion for summary judgment filed by The Guardian Life Insurance Company of America (Guardian). (Dkt. 40.) This Court permitted Plaintiff's attorney to withdraw, and Plaintiff is now proceeding pro se.[4] Further discovery was conducted and a new dispositive motion filing deadline was imposed. The Court now considers Guardian's second motion. Plaintiff seeks relief for the denial of long term disability (LTD) benefits only.[5]

## STANDARD OF REVIEW

In its prior analysis of the various standards of review, the Court determined that although the *de novo* standard should apply, a genuine issue of material fact existed as to whether Plaintiff was a full-time employee, and thereby eligible for LTD benefits, and whether Plaintiff provided sufficient medical proof of disability and proof of earnings to Guardian. Nevertheless, Guardian submits that decisions issued after the determination of the first summary judgment require that the more deferential arbitrary and capricious standard apply. The applicable standard of review is therefore an intricate part of the analysis of the issues in the case and will be addressed in the overarching analysis of the case.

---

[4] Prior counsel withdrew in July 2008 and thereafter other counsel has appeared on his behalf intermittently in telephonic hearings. No counsel, however, ever filed a notice of appearance, and Plaintiff has filed a pro se response to this motion.

[5] According to the parties, the claim to short term disability benefits has been resolved.

**ISSUES**

Guardian raises five grounds for entry of summary judgment: (1) Plaintiff submitted his claim for LTD benefits almost one and one-half years late, thereby prejudicing Guardian's ability to investigate the claim; (2) Plaintiff ceased to work full-time before he became disabled and is therefore ineligible to receive LTD benefits; (3) Plaintiff failed to identify and provide sufficient evidence of a disabling "injury" or "sickness" as required by the Plan; (4) Plaintiff failed to provide evidence that he suffered an 80 percent decline in his earnings; and (5) Plaintiff failed to show that the 80 percent decline was attributable to his health as opposed to his business. Plaintiff submitted his reasons why each ground should fail.

**ANALYSIS**

*Timeliness of Notice of Claim*

Plaintiff submitted his notice of claim for LTD benefits on June 10, 2005. (AR 397-399.) The claim form shows that the start date of partial disability was February 2003, and the start date of total disability was February 2004. (AR 397). He notes on the form that he was first treated for his back in October 1970, resulting from a high school football injury. Plaintiff describes his disability as "pain secondary to spinal conditions," and "acute pain, inability to ambulate, and chronic pain syndrome." (AR 397-399.) Plaintiff then reinjured his back on February 8, 2002, when a chair collapsed under him while attending a professional conference. (AR 524.) His treating physician, Dr. Brecher, found him totally disabled beginning February 1, 2004, through June 10, 2005,

although the first date of treatment was June 10, 2005. (AR 968.) Plaintiff no longer worked full-time as of February 9, 2002 when he began working only four (4) hours per day. (AR 528.)[6]

Guardian contends that it suffered prejudice from the late notice, late proof of claim, and inadequate explanations. Specifically, Plaintiff submitted his proof of claim over three years after the February 2002 chair incident and almost one and one-half years after the February 2004 date which was identified by Plaintiff as the start date of total disability. Plaintiff's reasons for his late filing of the claim included his attorneys, his lack of need for the money at the time of the initial disability in February 2002, and his low personal self esteem in the face of his declining health. (AR 529 & 1190). Although Plaintiff claimed he had been treated by Drs. Larnel Sultan and Harold Schultz at the onset of the claim, Plaintiff never provided any proof of these contentions, stating that Dr. Sultan no longer worked at the practice where he had received treatment and that Dr. Schultz died in March 2005 and neither Plaintiff nor Guardian were able to obtain his records. (AR 528, 985 & 1221-1222.)

The timeliness of the notice of a claim is governed by the plan's language and the common law of the forum state. See generally Unum Life Ins. Co. v. Ward, 526 U.S. 358

---

[6] Plaintiff admitted that he worked only four hours per day from February 9, 2002 until February 2004. (AR 528.)

(1999) (construing California statute in matter where claimant submitted proof of claim outside time limit set in policy).[7] The language of the Plan[8] provides as follows:

> **Total Disability** means: (a) an employee is totally unable to perform all the material duties of his regular occupation on a full-time basis due to sickness or injury; and (b) solely due to his disability, employee's current monthly earnings, if any, do not exceed 20% of his prior monthly earnings. This plan only covers total disability that starts while an employee is insured by this plan.

(AR 25.) The Plan further provides that only active full-time employees may be eligible for disability coverage. (AR 20 & 72.) "Full time" means an employee who regularly works not less than 30 hours per week at the employer's place of business. (AR 31.) The employee becomes ineligible to receive LTD benefits if "active service ends for any reason," including disability or other stated reasons. (AR 20 & 73.) Coverage ceases "on the date [the employee] stop[s] being a member of a class of employees eligible for insurance under this plan." (AR 20.)

The Plan further provides that written notice "must be sen[t] [to] us . . . of an injury or sickness for which a claim is being made within 20 days of the date the injury

---

[7] See also River v. Commercial Life Ins. Co., 160 F.3d 1164 (7th Cir. 1999); Broughton v. Unum Life Ins. Co. of America, No. Civ. 06-4015, 2007 WL 39432, * 8 (D. S.D. Jan. 5, 2007) (analyzing late notice and noting that South Carolina law does not require insurer to suffer prejudice).

[8] The Plan vests full discretion in Guardian as claims fiduciary to "determine eligibility for benefits and to construe the terms of the plan with respect to claims." (AR 33).

occurs or the sickness starts." (AR 8.) The provision titled "Late Notice of Proof" provides that, "We won't void or reduce an employee's claim if he can't send us notice of proof of loss within the required time. But he must send us notice and proof *as soon as possible.*" (AR 8) (emphasis added).

With respect to the common law of Florida, an insured's untimely disability claim creates a rebuttable presumption that the insurer was prejudiced and justifies a denial of LTD benefits. See <u>Lane v. Provident Life & Accident Ins. Co.</u>, 178 F.Supp.2d 1281, 1287-88 (S.D. Fla. 2001) (citing Florida cases). Thus, the issue here is whether Plaintiff has carried his burden of showing that Guardian as the insurer was not prejudiced. In <u>Lane</u>, the insured was not able to rebut the presumption of prejudice because, as here, the insurer was regularly trying to gather sufficient proof of disability. <u>Id</u>. at 1288. In the instant case, many of Plaintiff's medical documents and records generated by identified doctors were never submitted despite attempts on Guardian's part to request those medical records. There is no question that the delay resulted in the inability to obtain medical records; for example, one doctor died, and another stopped or moved his practice. Over the sixteen months between February 2004 and June 2005,[9] Guardian was unable to

---

[9] That Plaintiff changed the stated date of total disability to June 10, 2005, the date he filed the claim, only serves to contradict his earlier position with respect to the start date of the disability as February 2004. Plaintiff cannot point to anything in the record to verify the later, June 10, 2005, date as the onset of his total disability.

require Plaintiff to submit to an independent examination[10] or to conduct interviews with other employees in the business.

Plaintiff, as the plaintiff in Lane, has not shown that he filed his notice of claim "as soon as reasonably possible." See also River v. Commercial Life Ins. Co., 160 F.3d 1164, 1171 (7th Cir. 1999) (finding one-year delay in filing notice of claim based on mental problems was unreasonable as well as inconsistent with 20-day notice period under plan language). Plaintiff's failure to timely file his notice prejudiced Guardian because it could not verify that Plaintiff was totally disabled pursuant to the terms of the Plan. Thus, based on a review of the administrative record and the lack of evidence submitted by Plaintiff, the Court concludes that Plaintiff has failed to rebut the presumption that Guardian was prejudiced in the review of the claim.

*Plaintiff's Cessation as Full-Time Employee*

Under the language of the Plan, full-time employment means that "the employee regularly works at least the number of hours in the normal work week set by the employer (but not less than 30 hours per week), at this employer's place of business." (AR 31.) To be eligible for LTD benefits under the Plan, an employee must "be an active full-time employee." (AR 20.) If full-time service ends, even by reason of disability, the employee

---

[10] "We [Guardian] have the right to have a doctor of our choice examine the person for whom a claim is being made under this plan as often as we feel necessary." (AR 8.)

becomes ineligible. (AR 73.) On the date the employee ceases to be a member of a class of eligible employees, such as a full-time employee, coverage ends. (AR 20.)

By Plaintiff's own admission, he worked only four hours per day from February 9, 2002 until February 2004, continuing up to at least the day he filed the notice of claim on June 10, 2005. (AR 528.) Assuming he worked only four hours per day beginning February 9, 2002, the date he became partially disabled, he has not been covered since that date. Assuming he did not become totally disabled until June 10, 2005, the newly-asserted date of total disability, then he was not working full-time on that date and he was not covered by the Plan.[11] Based on the record, Plaintiff was not a full-time employee under the terms of the Plan requiring 30 hours or more per week at the employer's place, and therefore was not eligible for LTD benefits under the Plan.[12]

---

[11] See Winkler v. Principal Life Ins. Co., No. 3:05cv288-RS-EMT, 2006 WL 1037023, *7 (N.D. Fla. Apr. 19, 2006) (finding that ERISA policy in effect at time of disability governed eligibility and later, amended policy did not apply to plaintiff because he was not full-time employee at time amended policy became effective and was therefore not covered under new policy); Perry v. New England Bus. Serv., Inc., No. CIV.A. 01-11508-RWZ, 2002 WL 31399132 (D.Mass. Oct. 22, 2002) (finding plaintiff was not active full-time employee under policy because she had been on leave for six years at the time she filed claim for LTD benefits); Jaeger v. Matrix Essentials, Inc., 236 F.Supp.2d 815, 828-29 (N.D. Ohio 2002) (finding that plaintiff who worked only 30 or more hours two out of seven weeks was not "full-time" employee under terms of plan that required more than 30 hours per week to be considered full-time).

[12] Plaintiff asserts that as the CEO, he was always on duty on a full-time basis. What Plaintiff understood as the unambiguous terms of the Plan, however, is irrelevant. By his own admission he was not at the place of the employer and was not working more than four hours per day, which amounts to twenty, not thirty, hours per week.

*Plaintiff's Failure to Provide Sufficient Medical Proof of Disability*

Under the Plan, a total disability requires that Plaintiff demonstrate a disabling "sickness or injury." (AR 25). The Plan also permits Guardian as administrator to require Plaintiff to provide "acceptable written proof" of his disability, "including proof that you have been under the regular care of a doctor for the cause of the total disability." (AR 985). Medical certification of disability from business associates is not acceptable proof of disability. (AR 26 & 985).[13] The employee must "send us written notice of an injury or sickness for which a claim is being made within 20 days of the date the injury occurs or the sickness starts." (AR 8). The employee "must send us acceptable written proof of : (a) his total disability; (b) his prior monthly earnings; and (c) any current monthly earnings." (AR 25).

The file reveals that Dr. Brecher, the physician who certified Plaintiff's total disability as starting February 4, 2004, had not in fact seen or examined Plaintiff until June 10, 2005. (AR 397-399 & 986). Because Plaintiff was not under the regular care of Dr. Brecher at the time of total disability, Guardian determined that it could not accept Dr. Brecher's certification as sufficient proof of disability. The later-filed medical records contained only references to Dr. Brecher, but most importantly, those medical

---

[13] "We require periodic proof of: (a) continued disability; (b) continued regular doctor's care for the cause of the disability; and (c) any current monthly earnings. See 'Accident and Health Claims Provisions' for how often we can ask this." (AR 26). "We'll pay benefits for loss of income once every 30 days for as long as we're liable, *provided you submit periodic written proof of loss* as stated above." (AR 8) (emphasis added).

records were submitted by a subsidiary, Trillium Medical Group, of Coates' company, Bredel Corporation. (AR 419, 421 & 1184). Even without a provision in the Plan, case law provides that it is reasonable for an administrator to require objective medical evidence. See Hufford v. Harris Corp., 322 F.Supp.2d 1345, 1356 (M.D. Fla. 2004).

Finally, Guardian draws this Court's attention to one of Plaintiff's answers to interrogatories, should this Court look at the record *de novo*, and consider materials outside the administrative record.[14] His answer described his disability as "longstanding injuries in the lumbar and cervical region."[15] This answer falls short of satisfying Plaintiff's burden of proving that he is entitled to LTD disability benefits. See Providence v. Hartford Life & Acc. Ins. Co., 357 F.Supp.2d 1341, 1345 (M.D. Fla. 2005) (finding that plaintiff failed to meet burden of submitting satisfactory proof of loss because not one medical opinion given contemporaneously with the injury was provided). Based on the insufficiency of the medical proof, Plaintiff failed to comply with the Plan in order to obtain LTD benefits.

*Plaintiff's Failure to Provide Sufficient Financial Proof of Disability*

The Plan requires that Plaintiff demonstrate that his disability resulted in a decrease in monthly earnings of at least 80%. (AR 11 & 24). Plaintiff was required to provide his individual federal income tax returns for the years August 2003 and 2004, at a minimum. He never produced his 2004 tax returns to verify his claim that his earnings

---

[14] See docket 91, p. 2-3.

[15] See docket 91, p. 3.

had decreased. (AR 948-949). Part of this record is Plaintiff's accountant's letter generated during the course of this litigation that advised Plaintiff of errors and the need to refile amended corporate and individual returns. (AR 1070). None were ever received. On balance, the financial records submitted to establish Plaintiff's earnings were inadequate to determine whether Plaintiff's income had decreased the requisite amount.[16] Consequently, Plaintiff failed to establish entitlement to LTD benefits on this basis.

*Plaintiff's Failure to Prove His Earnings Declined, if at all, Solely Due to Disability*

Not only was Plaintiff required to prove that his earnings had declined at least 80%, but he was also required to show causation— that the decline was "solely due" to the disability. (AR 25). Based on Guardian's expert report, any decline in income could have been caused by various reasons other than his disability.[17] Having failed to establish that he provided sufficient proof of the above four categories, Plaintiff cannot claim to be entitled to LTD benefits absent a showing that any decline was caused by the disability.[18]

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)   Defendant's Motion for Summary Judgment (Dkt. 102) is **GRANTED.**

(2)   The clerk is directed to enter final judgment for Defendant Guardian.

---

[16] See docket 93, pp. 4-5 & docket 102, Exh. C, Expert Report, pp. 2-3.

[17] See docket 102, Exh. C, Expert Report, p. 3.

[18] The remainder of Guardian's motion focuses on the correct standard of review. The Court declines to revisit the operative standard of review in view of the fact that, even under the *de novo* standard that this Court found governed this case, Plaintiff's evidence submitted outside the administrative record does not change the outcome of this decision.

(3)     The clerk is directed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on April 16, 2009.

   s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record